

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

September 14, 2018

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/05/2018
```

**BY ECF**

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States* v. *Robert Farkas*, 18 Cr. 340 (LGS)

Dear Judge Schofield:

    The Government respectfully requests that the Court set a conference in the above-referenced matter in order to address a potential conflict of interest with respect to defendant Robert Farkas's prospective new counsel of record in this case. The Government believes that a potential conflict of interest exists and respectfully requests that the Court schedule a hearing pursuant to the Second Circuit's guidance in *United States* v. *Curcio*, 680 F.2d 881 (2d Cir. 1982).

## Background

    On May 14, 2018, the above-captioned Indictment (the "Indictment") was returned. The Indictment charges Farkas, along with his co-defendants Sohrab Sharma and Raymond Trapani, with conspiracy to commit securities fraud, securities fraud, conspiracy to commit wire fraud, and wire fraud. Farkas has been represented by Daniel J. Horwitz in this matter. On August 23, 2018, attorney Paul D. Petruzzi filed a *pro hac vice* motion to appear as counsel for Farkas, which this Court granted on September 7, 2018. On September 11, 2018, Mr. Petruzzi filed a Notice of Appearance in this case. We understand that Mr. Petruzzi has also filed a Consent Order Granting Substitution of Attorney by letter to the Court, which is currently pending before the Court.

## Potential Conflict

    On September 12, 2018, Mr. Petruzzi advised the Government that his fee agreement is solely with Farkas. Mr. Petruzzi has also advised that, in the event that Farkas is unable to pay any portion of Mr. Petruzzi's legal fees by the conclusion of this case, his legal fees arising out of his prospective representation of Farkas will be paid for by a trust of co-defendant Sharma's assets that is being administered, pursuant to a Personal Recognizance Bond entered on June 7, 2018 (Docket No. 33), by Sharma's father, Rakesh Sharma. This presents a potential conflict of interest

Honorable Lorna G. Schofield
September 14, 2018
Page 2 of 5

arising from the fact that Rakesh Sharma, father of co-defendant Sharma, appears to have guaranteed payment of prospective defense counsel's fee.[1]

### Discussion

The Sixth Amendment provides a criminal defendant with the right to the effective assistance of counsel, which includes "the right to representation by conflict-free counsel." *United States* v. *Schwarz*, 283 F.3d 76, 90 (2d Cir. 2002). District courts have two separate obligations where there is a possible conflict of interest. First, the district court has an "inquiry obligation" when it is apprised of the possibility of a conflict of interest, under which it must "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States* v. *Levy*, 25 F.3d 146, 153 (2d Cir. 1994). Second, if the district court finds after some inquiry that the defendant's attorney suffers from an actual or potential conflict, the district court then has a "disqualification/waiver" obligation, under which it is required either to disqualify the attorney if the conflict is sufficiently severe, or, if the conflict may be waived, to conduct a *Curcio* hearing to advise the defendant of the ramifications of the conflict and obtain a waiver of any conflict from the defendant.

Three types of conflicts of interest are the subject of judicial inquiry and can potentially result in the deprivation of the effective assistance of counsel: (1) a *per se* conflict; (2) an actual conflict; and (3) a potential conflict that results in prejudice to the defendant. *See Armienti* v. *United States*, 313 F.3d 807, 810 (2d Cir. 2002); *United States* v. *John Doe No. 1*, 272 F.3d 116, 125 (2d Cir. 2001).

In the Second Circuit, *per se* conflicts have been found only in two classes of cases: where trial counsel "is not authorized to practice law" and where trial counsel "is implicated in the very crime for which his or her client is on trial." *Armienti* v. *United States*, 234 F.3d 820, 823 (2d Cir. 2000); *accord United States* v. *Jones*, 381 F.3d 114, 119 (2d Cir. 2004); *see also Solina* v. *United States*, 709 F.2d 160, 164 (2d Cir. 1983) (unlicensed attorney); *United States* v. *Cancilla*, 725 F.2d 867, 868-70 (2d Cir. 1984) (attorney implicated in client's crime). The Second Circuit has repeatedly and consistently refused to extend the *per se* rule beyond the two prescribed categories. *United States* v. *Levy*, 25 F.3d 146, 157 n.8 (2d Cir. 1994) ("[W]e have repeatedly stressed the limited reach of the *per se* rule, emphasizing that it applies only when a defendant's lawyer was unlicensed or had engaged in the defendant's crimes.").

An actual conflict exists when "during the course of the representation, the attorney's and defendant's interests diverge with respect to a material legal or factual issue or to a course of

---

[1] The Government also notes that Mr. Petruzzi shares the same office space as defendant Sharma's new counsel, Gennaro Cariglio Jr., at 8101 Biscayne Blvd., Penthouse 701, Miami, Florida 33138. Mr. Petruzzi has advised the Government that he and Mr. Cariglio maintain separate practices.

action." *Schwarz*, 283 F.3d at 91 (applying standard derived from *Cuyler* v. *Sullivan*, 446 U.S. 335 (1980)). To show divergent interests, "[s]peculation is not enough." *Triana* v. *United States*, 205 F.3d 36, 42 (2d Cir. 2000). Nor is a "mere theoretical division of loyalties." *Mickens* v. *Taylor*, 535 U.S. 162, 171 (2002). There can be an actual conflict of interest only if "the attorney's current representation is impaired by the loyalty he owes a former client." *United States* v. *Leslie*, 103 F.3d 1093, 1098 (2d Cir. 1997) (citing *United States* v. *Malpiedi*, 62 F.3d 465, 469 (2d Cir. 1995).

Conflicts that do not fall into the categories of per se conflicts or actual conflicts are described as potential conflicts. *See, e.g.*, *Armienti*, 234 F.3d at 824. "An attorney has a potential conflict of interest if 'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'" *United States* v. *Perez*, 325 F.3d 115, 125 (2d Cir. 2003) (quoting *United States* v. *Klitti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998)).

The Second Circuit has long recognized that a potential conflict of interest arises when an attorney is paid by someone other than the attorney's client, triggering an obligation for a court to inquire as to the nature of the conflict:

> Ethical considerations warn against an attorney accepting fees from someone other than her client. As we stated in a different context, the acceptance of such "benefactor payments" "may subject an attorney to undesirable outside influence" and raises an ethical question "as to whether the attorney's loyalties are with the client or the payor."

*United States* v. *Locascio*, 6 F.3d 924, 932 (2d Cir. 1993) (quoting *In re Grand Jury Subpoena Served Upon John Doe*, 781 F.2d 238, 248 n.6 (2d Cir. 1985) (*en banc*)); *see, e.g.*, *Amiel* v. *United States*, 209 F.3d 195, 198-99 (2d Cir. 2000) (holding that if counsel advised defendant to adopt a strategy that was in the interests of the third-party payor of counsel's fees but not in the best interests of the defendant, "these facts . . . would entitle appellant to relief [on an ineffective assistance claim] on the ground that trial counsel abdicated his duty of loyalty by permitting a third party who paid his fees to influence his professional judgment in representing [the defendant]" (citations omitted)). *Cf. Triana* v. *United States*, 205 F.3d 36 (2d Cir. 2000) (no actual conflict found where attorney was paid by unknown third party with whom attorney did not discuss tactics or strategy).

Indeed, it is commonplace in this District for courts to conduct *Curcio* inquiries where, as here, there appears to be a third-party payor of the defendant's legal fees. *See, e.g.*, *United States* v. *Mehmet Hakan Atilla*, S3 15 Cr. 867 (RMB) (May 18, 2017 *Curcio* hearing); *United States* v. *Efrain Antonio Campo Flores*, 15 Cr. 765 (PAC) (May 12, 2016 *Curcio* hearing); *United States* v. *Evgeny Buryakov*, 15 Cr. 73 (RMB) (June 1, 2015 *Curcio* hearing); *United States* v. *Cheng Le*, 15 Cr. 38 (AJN) (May 13, 2015 *Curcio* hearing); *United States* v. *Alvaro Alfredo Eraso Mejia*, 11 Cr.

483 (JMF) (May 31, 2013 *Curcio* hearing); *United States* v. *Sulaiman Abu Ghayth*, 98 Cr. 1023 (LAK) (May 15, 2013 *Curcio* hearing).

We submit that, in light of the facts present here and under the well-established law outlined above, the Court should conduct an inquiry to determine whether Mr. Petruzzi has a conflict, and if so, determine the nature of that conflict. *See United States* v. *Stein*, 410 F. Supp. 2d 316, 323-24 (S.D.N.Y. 2006) ("[A]fter learning of the possibility of a conflict of interest, the district court first must determine whether the attorney has an actual conflict, a potential conflict, or no conflict at all." (internal quotation marks omitted)). As part of that inquiry, the Court "must investigate the facts and details of the attorney's interests." *United States* v. *Levy*, 25 F.3d 146, 153 (2d Cir. 1994).

The Second Circuit has set forth the requirements for a *Curcio* procedure in great detail:

> At such a hearing, the trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.

*Perez*, 325 F.3d at 119. If, as a result of that inquiry,

> the court discovers no genuine conflict, it has no further obligation. At the other end of the spectrum, if the court determines that counsel has an actual conflict that is so severe as to indicate *per se* that the rendering of effective assistance will be impeded, or is analogous to such a conflict in breadth and depth, the court must . . . disqualify counsel. And if, between these two extremes, the court determines that the attorney suffers from a lesser [actual] or only a potential conflict, then it may accept a defendant's knowing and intelligent waiver of his right to conflict-free counsel and permit the defendant to be represented by the attorney of his choice.

*Stein*, 410 F. Supp. 2d at 324 (quoting *United States* v. *Perez*, 325 F.3d 115, 125 (2d Cir. 2003)).

In the case of a lesser actual or potential conflict, before accepting a defendant's waiver, "the court must advise the defendant of the dangers arising from the conflict, encourage the defendant to seek advice from independent counsel, and then determine whether the defendant

understands the dangers of proceeding with conflicted counsel and knowingly and intelligently chooses to continue with the representation in spite of the conflict." *Id.* (citing *Curcio*, 680 F.2d at 888-89).

Accordingly, as reflected in Exhibit A, we respectfully request that the Court "investigate the facts and details of the attorney's interests," *Levy*, 25 F.3d at 153, by asking Mr. Petruzzi about who is paying him to represent the defendant and what, if any, instructions or advice he has received from such third party (which we understand to be co-defendant Sohrab Sharma and/or Sharma's father, Rakesh Sharma), either directly or through others, with respect to their representation of the defendant.  *See United States* v. *Kliti*, 156 F.3d 150, 153 (2d Cir. 1998) ("In fulfilling this initial obligation to inquire into the existence of a conflict of interest, the trial court may rely on counsel's representations." (citing *Levy*, 25 F.3d at 154)).

Assuming that such inquiry reveals only a potential conflict, Exhibit A includes proposed questions for the Court to ask the defendant to determine whether he knowingly and intelligently waives that potential conflict.

    Respectfully submitted,

    ROBERT KHUZAMI
    Attorney for the United States
    Acting Under 28 U.S.C. § 515

By:   /s/ Negar Tekeei_____
    Samson Enzer / Negar Tekeei
    Assistant United States Attorneys
    (212) 637-2342 / -2482

cc:   Paul Petruzzi, Esq. (by email and ECF)
      Daniel Horwitz, Esq. (by email and ECF)

Application Granted.  It is hereby ORDERED that Defendant Robert Farkas, his counsel, and the Government shall appear for a Curcio Hearing on October 11, 2018 at 11:10 a.m.  It is further, ORDERED that Ms. Rita Glavin, CJA counsel on duty today, is appointed for the limited purpose of discussing any potential conflicts with Defendant Robert Farkas.  Ms. Glavin is directed to contact and speak with Defendant Robert Farkas in advance of this hearing.  A copy of this Order will be emailed to Ms. Glavin.

The Clerk of the Court is directed to terminate the letter motion at docket number 68.

Dated: October 5, 2018
New York, New York

                LORNA G. SCHOFIELD
                UNITED STATES DISTRICT JUDGE

# Exhibit A

*United States* v. *Robert Farkas*, 18 Cr. 340 (LGS)
**Government's Proposed Inquiry for *Curcio* Hearing**

The Government respectfully requests the Court to include the following questions in its examination of defendant Robert Farkas, pursuant to the procedures outlined in *United States* v. *Curcio*, 680 F.2d 881 (2d Cir. 1982). In addition, the Government respectfully requests that the Court address the defendant personally, seek to elicit narrative answers from the defendant, and give the defendant opportunities to consider the Court's advice and review it with independent counsel prior to accepting a waiver, pursuant to *United States* v. *Rodriguez*, 968 F.2d 130, 138-39 (2d Cir. 1992).

**Proposed Inquiry of Prospective Defense Counsel, Paul Petruzzi, Esq.**

1. Has the defendant paid you or promised to pay you to represent him in this case? *If no:* Who has paid you or promised to pay you to represent the defendant?

2. Do you have an attorney-client relationship with that third party?

3. What, if any, instructions or directions have you received from that third party, either directly or through others, with respect to your representation of the defendant?[1]

**Proposed Inquiry of Defendant Robert Farkas**

**Introductory Questions to Establish Competence**

4. How old are you?

5. How far did you go in school?

6. Do you currently consult a doctor for any condition?

7. Are you currently under the influence of alcohol or drugs of any kind?

8. Is there anything interfering with your ability to understand what is happening here today?

**The Defendant's Application for New Counsel**

9. Are you currently represented by the Daniel J. Horwitz?

10. How long has Mr. Horwitz represented you?

---

[1] To the extent this question calls for prospective new counsel to discuss communications subject to the attorney-client privilege, the Court could pose this question *ex parte* and *in camera*.

1

11. Has Mr. Horwitz represented you in connection with any matters other than this case? *If yes:* What other matters?

12. Have you been satisfied with the representation by Mr. Horwitz?

13. Do you wish to continue to be represented by Mr. Horwitz, or do you wish to be represented by new counsel, Mr. Petruzzi?

    *If the defendant wishes to substitute Mr. Petruzzi as counsel:*

14. How long have you known Mr. Petruzzi? Has Mr. Petruzzi represented you in connection with any matters other than this case? *If yes:* What other matters?

15. Is your choice to be represented by Mr. Petruzzi a choice that you have made voluntarily and of your own free will? *If no, inquire further.*

16. Has anyone told you that you are required to, or must, choose Mr. Petruzzi to represent you? *If yes, inquire further.*

17. Has anyone threatened you with regard to your choice of counsel in this case? *If yes, inquire further.*

18. Has anyone made any promises to you, or offered any inducements to you, with regard to your choice of counsel in this case? *If yes, inquire further.*

**The Defendant's Right to Conflict-Free Representation**

19. Have you paid or promised to pay Mr. Petruzzi for his services representing you in this case?

20. Has anyone else paid or promised to pay Mr. Petruzzi for his services representing you in this case? Who is that?

21. Because of the conflict we are discussing today, I wish to advise you of certain matters. You should understand that under the United States Constitution and the laws of this country, you are entitled to the aid and assistance of counsel at all times in these proceedings. You are entitled to counsel of your own choice unless there is a strong legal reason for disqualifying that counsel. If you cannot afford an attorney, an attorney will be appointed to represent you without cost. Do you understand?

22. It is essential to the idea of an adequate defense in a criminal proceeding that your attorneys have no conflicts or adverse interests of any kind. That is to say, they cannot, unless it is with your knowledge and consent, have any conflicting interest in the case. You have the right to the assistance of a lawyer whose loyalty to you is undivided and not subject to any factor that might intrude upon that loyalty. The purpose of this law is to ensure that you have the full devoted defense furnished to you by an attorney who have no other possible interest of any kind in this matter. Do you understand that?

23. In other words, do you understand that, in every criminal case, including this one, the defendant is entitled to be represented by an attorney or attorneys whose loyalty to him is undivided, and who is not subject to any force or consideration that might in any way intrude upon the attorney's loyalty to his client's interests?

24. Do you understand that whenever someone other than the defendant is paying the lawyer or lawyers representing that defendant, it is possible that whoever is or will be paying may have interests different than the defendant's interests, and that the lawyer's judgments may be influenced by the wishes of whoever is paying his bill, or by what the lawyer thinks are the wishes of whoever is or will be paying the bill, rather than the wishes of the defendant?

25. So it is possible, in this case, that Mr. Petruzzi may be influenced, in the advice that he gives you and in the way that he defends you, by what he is told are the wishes of, or what he thinks are the wishes of, Sohrab Sharma and/or Rakesh Sharma and that those wishes may be different than your wishes?  Do you understand that?

26. And do you understand that this situation—having your lawyer potentially paid by someone other than you and, in this case, a co-defendant or a parent of a co-defendant— creates a risk to you that he may not be acting solely in your interests?

27. For example, Mr. Petruzzi may have a desire to advise you to follow a course of action that is desired by, or in the interests of, Sohrab Sharma and/or Rakesh Sharma but that may be contrary to your own interests.  Do you understand that?

28. Do you understand that Mr. Petruzzi might conceivably be tempted to curry favor with Sohrab Sharma and/or Rakesh Sharma or to take actions that might not be to your benefit in order to endear himself to Sohrab Sharma and/or Rakesh Sharma because they have promised to pay your attorneys' fees?

29. Do you understand that this could conceivably affect the way in which your Mr. Petruzzi represents you going forward in your case?  For example, do you understand that Mr. Petruzzi might be reluctant to make arguments at trial or in any court proceeding that casts Sohrab Sharma and/or Rakesh Sharma in a negative light.  Do you understand that? *The Court should conduct further inquiry on this topic, as appropriate, in light of information learned in response to Question 3 above.*

30. Have you spoken with any lawyer other than Mr. Petruzzi or Mr. Horwitz about the risks of being represented by Mr. Petruzzi in this case?  *If yes:*  Without telling me what was said, please tell me the name of the lawyer or lawyers with whom you spoke.  When did you speak with him/her/them?  For how long?

31. Do you understand that you have a right to consult with a lawyer other than Mr. Petruzzi or Mr. Horwitz to determine whether you wish Mr. Petruzzi to represent you?  Do you understand that the Court will give you an opportunity to do so?  Do you understand that, if you cannot afford other counsel, the Court will appoint counsel to consult with you about this conflict-of-interest issue?  Do you understand that the Court encourages you to consult with another lawyer about this conflict-of-interest issue?

**General**

32. Do you understand that you have the right not to have Mr. Petruzzi represent you, based upon the existence of a potential conflict of interest?

33. It is important that you understand that no one, including the Court, can predict with any certainty the course that this case will take and that no one, including the Court, can foresee all the ways in which you may be disadvantaged by proceeding with Mr. Petruzzi. Do you understand that?

34. Do you understand that it is the view of this Court, based on my experience as a judge, that it is generally ill-advised to proceed with an attorney who has a potential conflict of interest?

35. Do you understand that if I permit you to proceed with Mr. Petruzzi, that you will not be permitted to make any argument, on appeal or otherwise, based the potential conflict that we have discussed?  Do you agree to waive, or give up, any argument of that kind?

36. Now, to make sure you have understood what we have been discussing, please describe to me in your own words your understanding of the potential conflict or conflicts of interest that may arise in this case as a result of Sohrab Sharma and/or Rakesh Sharma paying or promising to pay your attorney's legal fees?

37. Is there anything that the Court has said that you wish to have explained further?

**Opportunity to Seek Advice of Other Counsel**

38. Do you understand that you have a right to consult with a lawyer other than your attorneys in order to determine whether you wish your attorneys to represent you?

*[If the Defendant has Consulted with Conflict Counsel Prior to the Curcio Proceeding]*

39. Have you already consulted with such an attorney? Who?

40. Have you had sufficient time to consult with [conflict counsel]?

41. Is there anything that the Court has said that you wish to have explained further?  Is anything unclear?

*[If the Defendant has not Consulted with Conflict Counsel Prior to the Curcio Proceeding]*

42. If you have not already consulted with such an attorney, do you understand that the Court will give you an opportunity to do so and that the Court encourages you to do so?

43. Do you understand that if you cannot afford other counsel, the Court will appoint counsel to consult with you regarding these conflict of interest matters?  Such an attorney will not be connected with your attorneys or the Government at all.  Anything you tell that attorney will be a secret between you and the attorney.  Do you understand that?

4

44. Do you understand that you may take some time to think about this and discuss it with your attorneys and with the attorney I appoint to give you independent advice?

45. Do you need court-appointed counsel for the purpose of consulting with you about these conflict-of-interest issues?

46. Is there anything that the Court has said that you wish to have explained further?  Is anything unclear?

**Second Proceeding if Requested and/or Concluding Questions**

47. Do you still wish to proceed with Paul D. Petruzzi  as your attorneys in this case?

48. Have you received any inducements, promises or threats with regard to your choice of counsel in this case?

49. Do you agree to waive any and all future arguments, on appeal or otherwise, that you were denied effective assistance of counsel because of your attorneys' conflict of interest?

50. Is your waiver of your right to conflict-free representation voluntary?