UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

    - against -

                                    18 CR 340 (LGS)

SOHRAB "SAM" SHARMA,
RAYMOND TRAPANI,
ROBERT FARKAS

                Defendants.
_____

## DEFENDANTS' JOINT OMNIBUS REPLY TO THE PROSECUTION AND FILTER TEAM MEMORANDA IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS

The Defendants, **ROBERT J. FARKAS** and **SOHRAB SHARMA**, jointly and through their respective undersigned counsel, file this omnibus Reply to both the Government's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Indictment and Motion for a Continuance[1] as well as the Government Filter Team's Memorandum of Law in Opposition to the Defendants' Pre-trial Motion to Dismiss the Indictment.  In support, the Defendants state as follows:

_____

[1] For issue clarity, the Defendants are filing a separate pleading in reply to the Government's opposition to the Defendant's request for a continuance.

# INTRODUCTION

Regrettably, what the government now blithely refers to as a "spill" of the Defendants' privileged communications could have been prevented from happening in the first place.  Indeed, and as discussed with more detail *infra*, it has now become obvious that the government's inattention, inadequate supervision, and ineffectual taint review using word-search software, significantly contributed to the intrusion[2] instead of mitigating it.

It is also exceedingly ironic for the government to now accuse the Defendants of making "entirely speculative and conclusory allegations . . . of misconduct and prejudice [that] are defeated by undisputed (and indisputable) facts" given the government (1) has already misrepresented facts[3] to this Court about the nature of the Slack communications at issue, and (2) continues to engage in double talk about whether the Prosecution Team had access to the privileged material prior to being walled off.[4]

---

[2] Unfortunately, the full nature of the intrusion remains unknown because the Filter Team has not actually viewed all of the communications contained in the over 1.3 million files that were produced by Slack in response to the government's search warrant.

[3] In particular, representations made to this court regarding the nature of the Slack communications omitted the fact that Slack was also used by the Defendants to communicate with their counsel.  See transcript of 12/19/18 status conference at p. 3.

[4] Perhaps one reason for the "double talk" now is because the government previously advised this Court that "before [the Slack evidence] was given to the prosecution team, a wall team at [the United States Attorney's Office]

Perhaps the most difficult thing to understand (especially given the current trial date)  is the government's assertion that neither one of the prosecutors representing the government in this matter has even begun to review <u>any</u> of the approximately 1.3 million Slack files that were produced to the Defendants pursuant to Rule 16 and the government's discovery obligations.

## **ADDITIONAL RELEVANT BACKGROUND**

The Defendants retained both inside and outside legal counsel[5] throughout 2017 to defend against the overlapping (and still ongoing) SEC fraud investigation,[6] a related civil lawsuit filed in federal court by individuals claiming to be the Defendants' victims, and the then-ongoing DOJ investigation targeting them for criminal law violations.  In fact, contrary to the government's assertions in opposing the Defendants' motions, the Defendants (Sharma, Farkas, and Trapani) were <u>personally</u> represented by several lawyers with the law firm

---

conducted a review to determine whether anything was privileged.  After that was done, what was left was given to the case team, including the FBI agent, who are reviewing the material for responsiveness to the warrant." Transcript of 12/19/18 Status Conference before this Court at p. 3.  Turns out, this wasn't exactly true.
[5] Although two of the individuals hired by the Defendants as legal counsel were, in truth, college students masquerading as attorneys as part of an elaborate consumer fraud that victimized the Defendants, the other individuals were *bona fide* attorneys.
[6] Notwithstanding the government's characterization of the SEC investigation as a "parallel" matter, it was not. Indeed, and to the extent that the SEC was actively investigating and gathering evidence relating to the Defendants and their company and then turning over its findings to the prosecution team in this case, the SEC played a direct role in the instant prosecution.

of Ballard Spahr, LLP as defense counsel in a civil fraud lawsuit brought by the government's alleged victims.  *See* Ballard Spahr, LLP *Pro Hac Vice* motions and related Orders in *Zowie, Resnel, et al. v. Centra Tech, Inc., Sohrab Sharma, Raymond Trapani, Robert Farkas and William Hagner*, Case No. 17-CV-24500-JLK (S.D.F.L.).  Ballard Spahr's representation of the Defendants in this lawsuit is not only a matter of public record, but as the case was being actively followed by the prosecution team, there exists no reason to believe that the government was, in any way, oblivious to the fact that the Defendants were represented by counsel even before the prosecution team notified them that they were targets of a criminal investigation.

Similarly, after the Defendants were notified they were under investigation for securities fraud by the SEC, and they retained counsel at Ballard and Spar, LLP for their corporate defense, a joint defense privilege was also established. And as the government concedes, between October of 2017 and January of 2018, the Defendants and their company hired four additional attorneys to work at their offices in various capacities.  Regardless, it is indisputable that the Defendants were represented by Ballard Spahr, LLP, in their personal capacities, at the time

-4-

the government obtained the search warrant for their electronic communications maintained by Slack.  Moreover, given the prosecution team's knowledge of, and involvement in, the related SEC investigation and victim lawsuit, it is clear that at least some members of the prosecution team must have known the Defendants were represented at the time.

Contrary to the representations made to this Court and to the Magistrate reviewing the search warrant application for Slack communications, government agents were actually aware that the Defendants and their lawyers (both internal and those with Ballard Spahr, LLP), and their employees communicated using Slack with respect to their then-pending legal matters.  Indeed, when the government sought production of the Slack communications through the SEC, lawyers with Ballard Spahr, LLP explicitly warned government attorneys that the electronic evidence was certain to contain privileged communications between the Defendants and counsel.[7]  As a result, production of these communications to the government was delayed pending the Defense Team's privilege review.

---

[7] Lawyers from Ballard Spahr, LLP can corroborate this fact should the Court desire testimony in person or by sworn declaration.

However, when information[8] suggesting the Defendants' potential flight was provided to the government by a young attorney employed at the defendants' company, the government hastily cobbled together a charging document to effectuate the Defendants' arrests.  Simultaneously, and without regard to the previous warnings given by Ballard Spahr, the government's lead case agent, Brandon Racz, (presumably under prosecutor supervision) prepared a search warrant application for all Slack communication records relating to the Defendants and their company.

In doing so, Agent Racz, who had been collaborating directly with the SEC investigation, never advised the reviewing magistrate (1) that the materials sought by the warrant would include privileged attorney client communications and (2) that the same electronic communications were already being reviewed, *in advance of their production to the government*, by Ballard Spahr to identify and segregate privileged communications from otherwise discoverable communications.

---

[8] As the government tells the story, it "became aware of information that Centra Tech's bank account had been depleted, that Farkas had requested research regarding foreign extradition laws, and that Farkas had made plans to travel to South Korea."  (DE 122 at 11).  In truth, it appears that a young lawyer named Jaclyn Haughom just seems to have conjured the whole thing up in a misguided effort to collect "whistleblower" money after learning she was going to be fired.

While not worse than failing to advise the reviewing magistrate that the Slack files would likely contain privileged communications, when the prosecution team did, in fact, receive a set of usable[9] Slack files pursuant to the warrant, members of the prosecution team set about "reviewing" the materials for evidence they could use at trial instead of assembling a filter team to cull out privileged materials prior to their review by the prosecution team. According to the government, at least one AUSA and two FBI Agents who are members of the prosecution team had access to the Slack electronic evidence containing the Defendants' privileged communications[10] weeks *before* the prosecution team provided the evidence to the "filter team" for their review.  (DE 122 at 14).

Indeed, Agent Racz had access to the contents of the Slack evidence within days of the issuance of the Slack search warrant when a "link to download" the evidence was emailed to him by Slack on April 16, 2018.  (DE 122 at 8, 12-14).  Yet the government now tries to mitigate the intrusion by stating that the Agent "experienced difficulty downloading the files in a format that could be transmitted to the FBI's

---

[9] According to the government, when Slack initially provided the electronic evidence responsive to the subpoena, the FBI was unable to access the data.

[10] To date, the government has been unable to specify exactly how many of the 1.3 million Slack files contain privileged information.

Computer Analysis Response Team ("CART")" which, in turn, caused him to request "technical support" from CART which "ultimately re-downloaded the files form the original link provided by Slack." (DE 122 at 12). The government's attempt at mitigation fails however, as the Slack evidence was loaded onto the FBI's "review" platform June 5th, the FBI case agents began accessing the documents on June 12th, and, on July 15, 2018, the FBI case agent met with AUSA Tekeei and Special Agent Allain "to discuss the volume and nature of the Slack" evidence "and the scope of their review." (DE 122 at 14). One week later, after two months of access and review by the prosecution team, they finally got around to "engag[ing] the Filter Team to begin the process of searching for and segregating any potentially privileged materials in the Slack Search Warrant Returns." (DE 122 at 14). It is again worth noting however, that this version of events is not what was previously described to the Court and the defendants with respect to the Slack records review. As noted, *supra*, the former version of what happened is that "before [the Slack evidence] was given to the prosecution team, a wall team . . . conducted a review to determine whether anything was privileged. After that was done, what was left was given to the case team, including the FBI agent, who are reviewing the material for

responsiveness to the warrant." Transcript of 12/19/18 Conference at p. 3. Clearly, both versions cannot be correct.

Regardless of the version of events, the government now embraces, it is all contrary to what the prosecution team describes as it's "Filter Team's standard review process." In particular, no member of the "Filter Team" ever "engag[ed] with defense counsel regarding any potentially privileged materials" prior to the Defendants filing their Motion to Dismiss, and, to date, nobody has been provided with a complete "log of materials that were identified as potentially privileged and/or which potentially met an applicable privilege exception." (DE 122 at 11). Instead, after four months of access to the Defendants' communications with their counsel concerning the fraud allegations against them, the government finally "disabled Special Agent Racz and Special Agent Allain's access to the Slack Search Warrant Returns, pending the Filter Team Review." (DE 122 at 14).

As a result of acquiring the privileged materials without employing adequate safeguards, the prosecution team exposed itself to substantial defense work product and attorney client communications. For example, with respect to the materials discovered by the Defendants and now identified as "Document 1," by the Filter

Team, the nature of the breach could not be more significant.  Indeed, these particular privileged communications consist of very specific factual and legal defenses to particular counts contained in the Indictment which, as it happens, are the same defenses that the Defendants currently plan to raise at trial.

## **MEMORANDUM OF LAW**

### A. The Government's suggestion that the Defendants maintained no privilege with their attorneys is contrary to the facts and law.

The government suggests this "Court should deny the defendants' motion in its entirety" because "it appears that the claims on which the defendants have based their motion to dismiss depend on the alleged mishandling of communications involving internal and external counsel *for the corporate entity Centra Tech*." (DE 122 at 6) (emphasis in original).  The government is incorrect – and it should know so.  Indeed, it is indisputable that Marjorie Peerce, Esq., Thomas Burke, Esq., David Axelrod, Esq., and others from Ballard Spahr, LLP represented *both* the Defendants, personally, *and* Centra Tech beginning in 2017 in several matters directly related to their business practices at Centra Tech.  *See e.g., Zowie, Resnel, et al. v. Centra Tech, Inc., Sohrab Sharma, Raymond Trapani, Robert Farkas and William Hagner*, Case No. 17-CV-24500-JLK

(S.D.F.L.).

The government also incorrectly suggests that "Centra Tech's status as a dissolved or defunct corporation likely renders its privilege defunct, thereby mooting any potential claim of privilege regarding the records that form the basis for the defendants' motions."  (DE 122 at 10). On the contrary, Centra Tech has not been dissolved.  *See* corporate filing attached as Exhibit A.  It is alive and well and remains domiciled in Delaware.  *Id*.  Thus, and ironically, since these state corporate records prove that Centra Tech has not been dissolved, the Defendants' would suggest it is the government's argument, not the Defendants' that is mooted.

In any event, insofar as the Defendants were, in their personal capacities, represented by counsel with whom they were communicating, they had a privilege.  To the extent that Centra Tech is not dissolved, it also still maintains a privilege.  And, as noted, a joint defense agreement existed among them all at the time.[11]

---

[11] If requested, undersigned will provide the Court with sworn attorney and client declarations in support.

## B. The Prosecution Team is tainted as a result of its unfettered access to Defendants' privileged materials.

In their respective responses to the Defendant's motion, the government ignores precedent, practice, and constitutional protections in favor of a "no harm, no foul" approach. For example, the Filter Team suggests that the Court may simply ignore the intrusion because "the Prosecution Team AUSAs have never reviewed the substance of the communications . . . [and] [w]hile the Prosecution Team agents may have reviewed some of these communications in the process of their responsiveness review, their exposure appears to have been minimal, if at all." (Filter Team Response at 11). Similarly, the prosecution team suggests that there is no constitutional violation because "the prosecutors have not seen any of the potentially privileged communications at issue [and] [t]o the extent that the investigating agents were exposed to them, the defense has not alleged how such exposure has prejudiced the defendants' Fifth Amendment or Sixth Amendment rights in any way." (DE 122 at 32). The Defendants respectfully disagree.

As the Supreme Court stated over 70 years ago, "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by

opposing parties and their counsel.  . . . Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. . . . The effect on the legal profession would be demoralizing.  And the interests of the clients and the cause of justice would be poorly served." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947).  For the same reasons, the government is forbidden from eavesdropping or planting agents to hear or disrupt councils of the defense. *See, e.g.*, *United States v. Henry*, 447 U.S. 264 (1980); *Black v. United States*, 385 U.S. 26 (1966); *see also In re Terkeltoub*, 256 F. Supp. 683, 685 (S.D.N.Y. 1966) ("The defendant has the right to prepare in secret . . . . The prosecution's secret intrusion offends both the Fifth and Sixth Amendment.") (citations omitted).

> Although the Sixth Amendment is concerned primarily with fairness at trial, it is not limited to that function. The right to counsel protects the whole range of the accused's interests implicated by a criminal prosecution. . . .
>
> Moreover, the appellants need not prove that the prosecution actually used the information obtained. The prosecution makes a host of discretionary and judgmental decisions in preparing its case. It would be virtually impossible for an appellant or a court to sort out how any particular piece of information in the possession of the prosecution was consciously or subconsciously

factored into each of those decisions. **Mere possession by the prosecution of otherwise confidential knowledge about the defense's strategy or position is sufficient in itself to establish detriment to the criminal defendant.**

Such information is "inherently detrimental, . . . unfairly advantage[s] the prosecution, and threaten[s] to subvert the adversary system of criminal justice." **Further, once the investigatory arm of the government has obtained information, that information may reasonably be assumed to have been passed on to other governmental organs responsible for prosecution**. Such a presumption merely reflects the normal high level of formal and informal cooperation which exists between the two arms of the executive.

*Briggs v. Goodwin*, 698 F.2d 486, 494-95 (D.C. Cir.) (emphasis added)

(quoting *Weatherford v. Bursey*, 429 U.S. 545, 556 (1977)), *reh'g granted and*

*opinion vacated on other grounds*, 712 F.2d 1444 (D.C. Cir. 1983).  And, in the

context of defending those charged with crimes, the Supreme Court stated:

Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper function of the criminal justice system is even more vital. The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case.

-14-

*United States v. Nobles*, 422 U.S. 225, 238 (1975). The work product privilege belongs to both attorney and client. *See In re Sealed Case*, 676 F.2d 793, 812 n.75 (D.C. Cir. 1982).

Here, and despite contrary representations to this Court and the parties, the Prosecution Team must now concede that its members received, accessed, and reviewed privileged theory of defense communications between the Defendants and their counsel.  The government must also now concede that it did so **before** sending the material to its Filter Team for review and culling of privileged material.  And significantly, the government must make these concessions under the cloud it created for itself by failing to follow its own procedures with respect to the handling of potentially privileged communications and then misrepresenting the method it did employ when discussing the issue with the Court and the parties.

### C. The Defendants are entitled to a taint hearing and the government's "Filter Team" must be replaced.

According to the Prosecution Team, "[t]he defendants' motions are based on vague and conclusory allegations, not facts supported by evidence or the record in this case, and, because the defendants have not established that the

potentially privileged information that is the subject of their motion is related in substance to the criminal investigation or prosecution they are not entitled to a hearing." (DE 122 at 38). The Defendants' respectfully disagree and, based on the Filter Team's Response, it seems that they do as well. Indeed, not only have the Defendants' shown that significant theory of defense privileged material was accessible to, and shared with, members of the prosecution team, but there can be no question that the material identified in their Response as "Document 1" is directly related to both their investigation and prosecution, and that Ballard Spahr, LLP represented the Defendants as well. Most importantly, though, the government's use of a government Filter Team was insufficient to ensure that the Defendants' Fifth and Sixth Amendment Rights were preserved. Thus, it needs to be replaced.

Courts routinely appoint third parties to conduct a privilege review under similar circumstances. *See, e.g., United States v. Kaplan*, No. 02 CR 883, 2003 WL 22880914, at *11 (S.D.N.Y. Dec. 5, 2003) (disapproving the government's use of a taint team to conduct a privilege review where it "appear[ed] that the FBI case agent was given access to review materials from seized files even before it

was determined whether or not the crime/fraud exception applied," which "eviscerate[d] any claim that an 'ethical wall team' within the Government effectively screens the prosecution team from privileged materials").  See also, *United States v. Stewart*, No. 02 CR. 396 JGK, 2002 WL 1300059, at \*7 (S.D.N.Y. June 11, 2002) (court appointed special master to conduct privilege review of documents seized from law office over government's request for a taint team review where attorney was willing to produce a privilege log to expedite special master's review, and there was no indication that attorney sought appointment of special master for purposes of delay); *In re Search Warrant for Law Offices Executed on March 19, 1992*, 153 F.R.D. 55, 59 (S.D.N.Y. 1994) (in case involving search warrant executed on law office, court disapproved of use of taint team because "reliance on the implementation of a Chinese Wall, especially in the context of a criminal prosecution, is highly questionable, and should be discouraged."); *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 962 (3d Cir. 1984) (in case involving search of law office, in order to "vindicate both the interests of the government in investigating and prosecuting crimes and the confidentiality interests of the law firm," court ordered that any effort by

-17-

government to obtain documents from law firm was to be overseen by the district court or a special master).

Courts have even ordered that privilege reviews be conducted by a neutral third party when the government seeks to search the legal files of a ***client*** rather than the ***attorney***. *See United States v. Jackson*, No. 07-0035 (RWR), 2007 WL 3230140, at *5 (D.D.C. Oct. 30, 2007) (court appointed magistrate to conduct privilege review of non-attorney's e-mails and text messages over government's request for a taint team review as an independent privilege review gave a stronger appearance of fairness under the circumstances); *In re Grand Jury Subpoenas*, 454 F.3d at 523 (ordering a special master to perform privilege review of documents to be produced by non-attorney in response to grand jury subpoena where "taint teams present inevitable, and reasonably foreseeable, risks to privilege, for they have been implicated in the past in leaks of confidential information to prosecutors"); *In re the Seizure of all Funds on Deposit in Accts. in the names of Nat'l Elecs., Inc.*, No. M-18-65 (HB), 2005 WL 2174052, at *3 (S.D.N.Y. Sept. 6, 2005) (court denied government's request for taint team review of documents seized from corporate office and conducted privilege review

-18-

itself where court "agree[d] that reliance on review by a 'wall' Assistant in the context of a criminal prosecution should be avoided when possible.

Given the "spill" of privileged theory of defense work product within an attorney client privileged communication, (and the government's contradictory explanations so far), there is no reason not to put the privilege review in the hands of a neutral third-party. This is especially so where, as here, the participation of the investigating agents in the search and the subsequent production of the communications to the defense by the prosecution demonstrates that the government, from the outset, failed to follow its own claimed "taint team" procedure despite the likelihood that the Slack search warrant would yield privileged communications prepared by the Defendants' in-house counsel, Allan Shutt, Esq., and outside lawyers with Ballard and Sparr, LLP.

### D. Conclusion

The Sixth Amendment mandates dismissal ***with prejudice*** as the appropriate remedy in this case. *See United States v. Levy*, 577 F.2d 200, 208 (3rd Cir. 1978) (dismissing indictment, rather than merely disqualifying prosecution team, where government invaded the defense camp and learned defense strategies: "The

government's knowledge of any part of the defense strategy might benefit the government in its further investigation of the case, in the subtle process of pretrial discussion with potential witnesses, in the selection of jurors, or in the dynamics of trial itself. . . The government's knowledge of this planned strategy would permit it not only to anticipate and counter such an attack on its witnesses' credibility, but also to select jurors who would be more receptive").

**WHEREFORE**, the Defendants **ROBERT J. FARKAS** and **SOHRAB SHARMA**, jointly and through their undersigned counsel, respectfully file this Reply to the government's Responses to the Defendants' Motion to Dismiss the Indictment, or for such other relief that may be warranted on the basis of the Government's violation of the Defendants' attorney client and work product privileges.

Respectfully submitted,

**PAUL D. PETRUZZI, ESQ.**
8101 Biscayne Blvd.
Penthouse 701
Miami, FL 33138
Phone: (305) 373-6773
Fax: (305) 373-3832
E-mail: petruzzi-law@msn.com

By:   s/ Paul D. Petruzzi
      **Paul D. Petruzzi, Esq.**
      Florida Bar No. 982059


**GENNARO CARIGLIO, ESQ.**
8101 Biscayne Blvd.
Penthouse 701
Miami, FL 33138
Phone: (305) 899-0438
Fax: (305) 373-3832
E-mail: sobeachlaw@aol.com

By:   s/ Gennaro Cariglio
      **Gennaro Cariglio, Esq.**
      Florida Bar No. 51985

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 29, 2019, a true and correct copy of the

foregoing was furnished by electronic delivery to all counsel of record.

By:   <u>s/ Paul D. Petruzzi</u>
**Paul D. Petruzzi, Esq.**
Attorney for Robert J. Farkas

-22-