# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

C.A. No. 1:18-cr-340 (LGS)

United States of America

                              Plaintiffs,

v.

SOHRAB SHARMA, ET. AL.,

                              Defendants.

**ANCILLARY PETITION FOR HEARING TO ADJUDICATE VALIDITY OF LEGAL INTEREST AND RIGHT TO FORFEITED PROPERTY UNDER 21 U.S.C. § 853(N)(1) AND
MOTION FOR AN ORDER DIRECTING THE NECESSARY STEPS BE TAKEN FOR EFFECTUATING AN ORDER OF RESTITUTION AS REQUIRED BY THE MVRA**

Jacob Zowie Thomas Rensel ("Rensel"), Wang Yun He ("Yun He"), Chi Hao Poon ("Hao Poon"), King Fung Poon ("Fung Poon"), Jae J. Lee ("Lee"), Mateusz Ganczarek ("Ganczarek"), and Rodney Warren ("Warren") (collectively, "Plaintiffs" or "Claimants")[1] are each investor-victims of Centra Tech, Inc.'s ("Centra Tech") extensive fraud to which Sohrab Sharma ("Sharma"), Raymond Trapani ("Trapani") and Robert Farkas ("Farkas") have pled guilty to in this action (the "Criminal Action") hereby petition, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(n)(1), for a hearing to adjudicate the validity of Claimants' interest in a portion of the 100,000 Ethereum ("ETH") seized from Centra Tech by the Federal Bureau of Investigations ("FBI") on behalf of Centra Tech's victims ("Centra Victims") in 2018 (the "Victim Funds").

Additionally, Plaintiffs respectfully move for an Order directing the Department of Justice ("DOJ") to fulfill its statutory obligations under the Mandatory Victims Restitution Act, 18 U.S.C. §3663A (the "MVRA"), and that the necessary steps be taken by probation officer and government to provide the Court with sufficient information to enter an Order of Restitution on behalf of Claimants and their fellow Centra Tech Victims.

## PRELIMINARY STATEMENT

Until recently, the Department of Justice ("DOJ") had consistently taken the position that the 100,000 Ethereum ("ETH") seized from Centra Tech in 2018 are "*owed*" to the Centra Victims and thus, it would seek an Order of Restitution to make the Centra Victims whole.[2] Unfortunately,

---

[1] Claimants are plaintiffs in a civil action pending in the Southern District of Florida captioned *Rensel v. Centra Tech, Inc. et al,* 17cv24500 ("Claimants' Action").

[2] *See, e.g.*, ECF Nos. 343; 360 (citing "*the victims' interest in advancing their ability to obtain a restitution order*" as one of the "specific reasons" for why Defendants' respective plea proceedings could not be "further delayed without serious harm to the interests of justice") (emphasis added)

the DOJ has reversed course and is now actively seeking to *prevent* Claimants and their fellow victim-investors from obtaining the restitution necessary to be made whole—restitution which Defendants' victims, including Claimants, are statutorily entitled to under the MVRA. Specifically, rather than return the "funds that are owed to the victim investors in this case,"[3] the DOJ is requesting entry of a final order of forfeiture which, if granted, would grant the DOJ clear title to the $33,422,373.45, representing the net proceeds from the sale of the 100,000 ETH owed Centra Victims, and result in the Victim Funds being deposited "in the United Stated Department of Justice's Assets Forfeiture Fund" (the "AFF").  ECF No. 410, Consent Preliminary Order of Forfeiture, at 5.

According to the DOJ's December 30, 2020 letter to the Court, if the Court enters a final order of forfeiture, the DOJ has "contemplated" establishing a remission process using the "pool of forfeited funds *potentially available* to compensate victims."  *See* ECF No. 436 (emphasis added).  Both the DOJ and Defendants claim this contemplated remission process would be in the best interest of the Centra Victims.  Defendant Sharma goes so far as to assert that, through this program, "everyone who was a victim of Mr. Sharma's actions almost certainly will be made whole."  ECF No. 437 at 7.  As detailed herein, contrary to the DOJ and Defendants' assertions, forfeiture of the Victim Funds in lieu of restitution would only serve the DOJ's interests, and those of Defendants, to the detriment of the actual victims of Defendants' crimes.  Accordingly, because Plaintiffs and the Centra Victims are entitled to mandatory restitution under the MVRA, Plaintiffs each have a certified final judgment against Centra Tech, which sets forth the actual interest held

---

[3] ECF No. 11, Transcript, Apr. 25. 2018 Hearing, at 9 ("The amount of money that is held in the digital wallet would 15 take a split second for the people who have the access to the code to transfer for themselves and use for themselves significantly depleting and dissipating investor funds; **funds that are owed to the victim investors in this case**.").

by each Claimant in the wallet that were seized. As the DOJ's request for forfeiture would harm the interests of justice, Claimants request a hearing to adjudicate the validity of Claimants' interest in a portion of the Victim Funds and urge the Court to order restitution, rather than forfeiture.

## BACKGROUND

Centra Tech was a start-up company that purported to develop and market the Centra Debit Card, which the company claimed would permit individuals to store and spend their cryptocurrencies, including bitcoin ("BTC") and ETH, in real time at any vendor that accepted Visa or Mastercard. *See* Indictment, ECF 14 ¶1. Sharma, Farkas and Raymond Trapani ("Trapani") (collectively, the "Founder Defendants") founded Centra Tech in or about July 2017. *Id.*, ¶14. To finance Centra Tech's operations and development of the Centra Debit Card and related products, Centra Tech conducted an "initial coin offering", during which it accepted digital funds from Centra Victims in exchange for unregistered securities in the form of Centra Tokens ("CTR"). *Id.*, ¶16.

Defendants engaged in a scheme to defraud investors in the Centra ICO, including Claimants, through the sale of unregistered securities and a series of material misrepresentations and omissions (the "Centra Fraud"). *Id.*, ¶14. Defendants' criminal conduct in connection with the Centra Fraud resulted in Centra Tech obtaining the Victim Funds from Claimants and other Centra Victims. *Id.*

On December 13, 2017, the Civil Action was initiated against, *inter alia*, Centra Tech, Sharma, Farkas, and Trapani (collectively, the "Centra Defendants").[4] *See* Civil Action, at Dkt. No. 1. On March 31, 2018, the Criminal Action was initiated against Sharma and Farkas and

---

[4] Defendants Sharma, Trapani, and Farkas are referred to herein as the "Founder Defendants". A fourth founder, William Hagner, is now deceased.

each individual was arrested on April 1, 2018. ECF No. 1.  Both the Civil Action and Criminal Action concern identical facts and substantively identical claims arising from the Founder Defendants orchestrating the fraud on Centra Tech's investors. *See* Complaint, at ¶ 3; *see generally*, Criminal Complaint.  Thereafter, on April 18, 2018, a similar Criminal Action was filed against Trapani, who was arrested on April 18, 2018.

On April 12, 2018, the Founder Defendants consented to the issuance of a preliminary injunction imposing an asset freeze over the full 100,000 ETH of Victim Funds raised from Plaintiffs and the putative class.[5]  The following day, on April 13, 2018, the FBI sought and obtained a warrant of seizure with respect to 91,000 ETH of the Victim Funds.  While attempting to seize the Victim Funds and thereafter, the DOJ consistently maintained that its efforts were meant to secure the funds for the benefit of the Centra Victims. *See, e.g.*, ECF No. 77, Motion for Revocation of Defendant Sharma's Bail, at 14 ("Sharma has thus repeatedly misrepresented material facts to the SEC, the Government and the FBI, and this Court – all in an effort to hide his access to significant assets that **belong to Centra Tech victims**.") (emphasis added).

Following substantial briefing and a hearing on the matter, in June 2018, Magistrate Judge Simonton recommended in Claimants' Action in the Southern District of Florida that an asset freeze be imposed over the 100,000 ETH. *See* Claimants' Action, Dkt. No. 79. Shortly thereafter, the Centra Defendants filed an emergency motion to modify the asset freeze and revoke their consent as to 9,000 of the 100,000 ETH. *Id.* at Dkt. No. 77-5 ¶16 (FBI Affidavit discussing circumstances surrounding Plaintiffs' efforts to secure the ICO Funds). On September

---

[5] *See* Civil Action, Dkt. No. 85-2 (April 12, 2018 email from defense counsel consenting to such terms). Indeed, the Centra Defendants also consented to an asset freeze covering the full 100,000 ETH in their papers concerning Plaintiffs' application for an asset freeze (Id. at Dkt. No. 63 at 4) as well as in open court during the hearing on the matter (*Id.* at Dkt. Nos. 85-3 at 76, 83, and 99).

25, 2018, Judge King in Claimants' Action imposed an asset freeze covering 91,000 ETH of the ICO Funds contained in the digital wallet currently secured by law enforcement. *Id*. at ECF No. 95.

On October 21, 2019, Plaintiffs filed their Motion for Leave to Appear as Interested Parties to invoke their participatory rights afforded under the Crime Victim's Rights Act ("CVRA"), 18 U.S.C. § 3771. *See* ECF No. 211.  On February 11, 2020, this Court endorsed Plaintiffs' motion for leave to appear. *See* ECF No. 267. On February 20, 2020, Defendants filed a response supporting Claimants' request and to appear in this proceeding to invoke their individual participatory rights under the CVRA.  *Id*. at Dkt. No. 279.

On December 13, 2019, after two years of actively litigating their claims against the Centra Defendants, Claimants secured entry of a final default judgment against Centra Tech. *See* Civil Action, at Dkt. No. 263.  That same day, Centra Tech filed a motion for reconsideration of the Court's computation of Plaintiffs' losses contained in the final default judgment.  On January 31, 2020, the District Court held a hearing on Defendant Centra Tech's challenges to the calculation of Plaintiffs' losses attributable to the Centra Fraud.  ECF No. 276.  On February 4, 2020, the District Court issued an order denying Centra Tech's motion for reconsideration and reaffirming the final default judgment entered in favor of Plaintiffs.  *Id.*

On March 24, 2020, Plaintiffs filed a motion for entries of Form AO 450s setting forth final judgment of Plaintiffs against Defendant Centra Tech. *Id*. at Dkt. No. 293. This motion was granted on June 5, 2020. *Id*. at Dkt. No. 299. Accordingly, on June 8, 2020, judgment was entered on Form AO 450s (the "AO 450s") for each individual Claimant against Centra Tech. *Id*. at Dkt. Nos. 300-06 (the "Final Judgments"). The AO 450s set the following as Final Judgments against Centra Tech:

- Plaintiff Jacob Zowie Thomas Rensel: "the amount of four hundred and seven dollars and seventy-nine cents ($407.79), which includes prejudgment interest at the rate of 6.89% per annum beginning on July 23, 2017 through December 13, 2019, plus post judgment interest at the rate of 1.57% per annum, computed daily to the date of payment and compounded annually, along with costs." *Id.* at Dkt. No. 300.

- Plaintiff Wang Yun He: "the amount of three million, one hundred and thirteen thousand, three hundred and thirty-fixe dollars and forty-nine cents ($3,113,335.49), which includes prejudgment interest at the rate of 6.89% per annum beginning on July 23, 2017 through December 13, 2019, plus post judgment interest at the rate of 1.57% per annum, computed daily to the date of payment and compounded annually, along with costs." *Id.* at Dkt. No. 301.

- Plaintiff Chi Hao Poon: "the amount of one hundred and twenty-nine thousand, six hundred and seventy-seven dollars and eighty-seven cents ($129,677.87), which includes prejudgment interest at the rate of 6.89% per annum beginning on July 23, 2017 through December 13, 2019, plus post judgment interest at the rate of 1.57% per annum, computed daily to the date of payment and compounded annually, along with costs." *Id.* at Dkt. No. 302.

- Plaintiff King Hung Poon: "the amount of eighty-one thousand forty-eight dollars and sixty-seven cents ($81,048.67), which includes prejudgment interest at the rate of 6.89% per annum beginning on July 23, 2017 through December 13, 2019, plus post judgment interest at the rate of 1.57% per annum, computed daily to the date of payment and compounded annually, along with costs." *Id.* at Dkt. No. 303.

- Plaintiff Jae J. Lee: "the amount of twenty-four thousand, three hundred fourteen dollars and sixty cents ($24,314.60), which includes prejudgment interest at the rate of 6.89% per annum beginning on July 23, 2017 through December 13, 2019, plus post judgment interest at the rate of 1.57% per annum, computed daily to the date of payment and compounded annually, along with costs." *Id.* at Dkt. No. 304.

- Plaintiff Mateusz Ganzarek: "the amount of thirty-two thousand, nine hundred twenty-three dollars and twenty-four cents ($32,923.24), which includes prejudgment interest at the rate of 6.89% per annum beginning on July 23, 2017 through December 13, 2019, plus post judgment interest at the rate of 1.57% per annum, computed daily to the date of payment and compounded annually, along with costs." *Id.* at Dkt. No. 305.

- Plaintiff Rodney Warren: "the amount of thirty-nine thousand, one hundred ninety-four dollars and three cents ($39,194.02) [sic], which includes prejudgment interest at the rate of 6.89% per annum beginning on July 23, 2017 through December 13, 2019, plus post judgment interest at the rate of 1.57% per annum, computed daily to the date of payment and compounded annually, along with costs." *Id.* at Dkt. No. 306.

***The grand total of Plaintiffs' Final Judgments added together is three million, four hundred and thirteen thousand, nine hundred and one dollars and sixty-eight cents ($3,413,901.68) (the "Total Judgment Figure")***. *Id.* at Dkt. No. 308.

On June 8, 2020, Plaintiffs' counsel contacted the government attorneys in this Action to inform them that the Claimants had secured certified final judgments against Centra Tech in their favor, and requested a meet-and-confer to discuss Plaintiffs' request that the government to utilize the "quick release" mechanisms available under 28 C.F.R. § 8.7 to release an amount of ETH from the Victim Funds necessary to satisfy the final judgments obtained by Plaintiffs.  On July 6, 2020, counsel for Claimants and the DOJ held a telephonic conference to discuss Plaintiffs' request. During that conference, the DOJ declined Plaintiffs' request for the DOJ to exercise its discretion to utilize the "quick release" to satisfy Plaintiffs' final judgments against Centra Tech.

On July 21, 2020, Plaintiffs filed their Motion for a Writ of Execution against Centra Tech (the "Florida Writs of Execution"). *Id.* On July 22, 2020, the Florida Writs of Execution were issued. *Id.* at Dkt. No. 309.

Concurrently with obtaining the Florida Writs of Execution, Plaintiffs also sought writs of execution for enforcement of their Final Judgments in New York (the "New York Writs of Execution"). The New York Writs of Execution were issued by the Southern District of New York on August 8th, 2020, against the U.S. Attorney's Office for the Southern District of New York.[6] After delays related to the COVID-19 pandemic, in which the U.S Marshals Service for the Southern District of New York could not and would not effect personal service for an indefinite

---

[6] *See* Case Nos. 1:20-mc-00232; 1:20-mc-00267; 1:20-mc-00268; 1:20-mc-00269; 1:20-mc-00272; 1:20-mc-00273; 1:20-mc-00274.

period of time, the New York Writs of Execution were sufficiently served on the United States

Attorney's Office for the Southern District of New York on November 23, 2020.

On November 19, 2020, the United States posted their notice of their intent to complete

the forfeiture process for the "100,000 Ether units that the Federal Bureau of Investigation (the

"FBI") seized in 2018 from the Defendant's digital Ether wallet." *See* Notice of Forfeiture, S3 18

CR. 340. The Notice of Forfeiture provided for sixty (60) days to file a petition in response. This

petition is timely filed.

## ARGUMENT

### I.    Defendants' Victims, Including Claimants, Are Entitled to Mandatory Restitution Pursuant to 18 U.S.C. § 3663A

"The 'primary and overarching' goal of the MVRA 'is to make victims of crime whole, to

fully compensate these victims for their losses and to restore these victims to their original state of

well-being.'" *United States v. Qurashi*, 634 F.3d 699, 703 (2d Cir. 2011) (citation omitted); *see*

*also United States v. Scott*, 321 F. App'x 71, 72 (2d Cir. 2009) ("The primary purpose of the

MVRA is to make victims of crime whole by fully compensating them for their losses."); *United*

*States v. Lucien*, 347 F.3d 45, 53 (2d Cir. 2003).  Under the MVRA's statutory scheme, "a district

court may—indeed, must—impose orders of restitution on defendants convicted of crimes

identified in the MVRA."  *United States v. Johnson*, 378 F.3d 230, 243–44 (2d Cir. 2004).

Here, Defendants have pled guilty to their criminal conduct in operating the Centra Fraud

and thus, restitution to Plaintiffs and other Centra Victims is mandatory under the MVRA.  *See,*

*e.g.*, *United States v. Zakhary*, 357 F.3d 186, 189–92 (2d Cir. 2004) ("Section 3663A, in contrast

to § 3663, makes restitution mandatory for losses suffered by victims of certain crimes-including

. . . fraud-and directs that restitution orders be issued and enforced in accordance with § 3664.")

(citing U.S.C. § 3663A(c)(1)(A)(ii), (d)).

9

As noted, *supra*, until recently, the DOJ consistently indicated that it would seek an Order of Restitution to make the Centra Victims whole.[7]  Now, the DOJ is inexplicably taking the position that fashioning restitution under the MVRA would be "impracticable" "due to the large number of victims and the complexity of determining victim's losses in this case."  *See* ECF No. 404, at 1.  Neither of these contentions are supported by the facts, the record, or precedent.  The DOJ's arguments are premised on the notions that "thousands" of potential Centra Victims might exist, and that entry of a Restitution Order under the MVRA would require "the Court to determine in less than three months" the identity of each and every one of these potential victims and the amount of each victim's losses by the deadline for sentencing Sharma.[8]

First, pursuant to MVRA, U.S.C. § 3663A (d) and § 3664(a)), it is the probation officer's responsibility to make such determinations with the DOJ's assistance, and subsequently submit them for review by the Court.  Second, there is no requirement that the amount of each victim's losses be determined by the date of sentencing.  In fact, the statutory framework expressly authorizes the Court to "set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing."  *Id.* 3664(d)(5).  Third, the mere existence of a few thousand identifiable potential victims does not exempt mandatory restitution.  As the Second Circuit has made clear: "even where a defendant's complex fraud scheme results in many victims whose identities and

---

[7] *See, e.g.*, ECF Nos. 343; 360 (citing "*the victims' interest in advancing their ability to obtain a restitution order*" as one of the "specific reasons" for why Defendants' respective plea proceedings could not be "further delayed without serious harm to the interests of justice") (emphasis added).

[8] *Id.* at 3–4 ("In order to impose an appropriate restitution order at the defendants' sentencings in this case, this Court would need to — by the time of defendants' upcoming sentencings — determine the identity of each of those victims and the amount of each victim's losses. That task would be virtually impossible for the Court to accomplish without unduly complicating and delaying the sentencing process in this case.").

losses are difficult to ascertain, the district court should identify the victims and their actual losses prior to imposing restitution under the MVRA." *United States v. Catoggio*, 326 F.3d 323, 329 (2d Cir. 2003) ("the government indicated that a 1,700–page victim restitution report was submitted to the district court last summer. According to the government, this report detailed $192 million in actual losses to approximately 10,000 victims. Therefore, Ageloff's claim that the victims are unidentifiable is at best a disingenuous effort to avoid a consequence of his criminal behavior.").

Finally, with respect to loss calculations, the MVRA explicitly sets forth the method by which restitution is to be calculated when returning the victim's property is impracticable—here the cryptocurrencies invested in Centra Tokens. In such cases, restitution is "an amount equal to— (i) **the greater of**—(I) **the value of the property on the date of the damage, loss, or destruction** (i.e., the calculation methodology adopted in Plaintiffs' Final Judgments against Centra Tech); **or** (II) **the value of the property on the date of sentencing** (i.e., the value of ETH/BTC on the date of Defendant Sharma's sentencing). There is nothing complex or unduly burdensome about making these calculations. Further, as noted, Claimants have already successfully prosecuted their claims arising from Defendants' crimes and secured final judgments in their favor in the Claimants' Action. This methodology has already been challenged by Centra Tech and determined to be judicially sound. *United States v. Gushlak*, 728 F.3d 184, 194–96 (2d Cir. 2013) ("[O]ur case law reflects the settled understanding among courts of appeals that a "**reasonable approximation**" will suffice, especially in cases in which an exact dollar amount is inherently incalculable.") (citations omitted); *United States v. Kerekes*, 531 F. App'x 182, 184 (2d Cir. 2013) ("'[T]he MVRA requires only a reasonable approximation of losses supported by a sound methodology,' and, '[s]o long as the basis for reasonable approximation is at hand, difficulties in

achieving exact measurements will not preclude a trial court from ordering restitution.'") (citation omitted).

## II.     Forfeiture of the Victim Funds Will Only Serve to Benefit the DOJ and Defendants, to the Detriment of Claimants and the Centra Victims

As seen, there is no justification for the DOJ's about-face and intention to forego seeking restitution in lieu of forfeiture of the Victim Funds to the AFF.  The DOJ's proposed remission process, even if implemented, would harm the interests of justice.  First, the DOJ has already indicated that, if established, such program would take "several years".  ECF No. 429 at 2.  Second, there are strong indicators that, if forfeited to the AFF, only a small fraction of the Victim Funds will ever be used to compensate Defendants' victims.   For example, the DOJ's own data demonstrates that, from 2014 through 2016, payments from the AFF to victims accounted for just 15% of the AFF's expenditures:

> While the DOJ tracks the amount of compensation provided to victims through forfeited assets, it does not have assurances that forfeited are being used to compensate victims to the greatest extent possible.  According to DOJ information, the agency made payments of about $595 million to eligible victims other than owners of the property from the Assets Forfeiture Fund from fiscal years 2014 through 2016, or 15 percent of $3.9 billion in paid expenditures during this period

**Table 5: Victim Payments and Expenditures from the Assets Forfeiture Fund, Fiscal Years 2014 through 2016**

|  | 2014 | | 2015 | | 2016 | | Total | |
|---|---|---|---|---|---|---|---|---|
|  | Dollars (millions) | Percentage | Dollars (millions) | Percentage | Dollars (millions) | Percentage | Dollars (millions) | Percentage |
| Victim Compensation | 294 | 21 | 137 | 10 | 164 | 14 | 595 | **15** |
| Third-Party Payments[a] | 59 | 4 | 30 | 2 | 48 | 4 | 138 | **4** |
| Asset Forfeiture Program Costs[b] | 465 | 34 | 538 | 40 | 520 | 44 | 1,523 | **39** |
| Equitable Sharing and Joint Law Enforcement Operations[c] | 567 | 41 | 630 | 47 | 446 | 38 | 1,642 | **42** |
| **Total Annual Expenditures** | **1,385** | **100** | **1,335** | **100** | **1,178** | **100** | **3,899** | **100** |

Source: Department of Justice (DOJ).  |  GAO-18-203

https://www.gao.gov/assets/690/689830.pdf at pp. 35–34. Additionally, per Defendant Sharma's sentencing memorandum, as of January 7, 2021, the government has only received "approximately 56 letters from the victims claiming approximately $1,635,716.39 in losses." ECF No. 437 at 38. Claimants, as a group of just seven individuals, have nearly $3.5 million in judicially confirmed losses and have direct knowledge of several other individual Centra Victims with well-documented, similarly significant losses. The DOJ having purportedly only received claims from 56 victims documenting just $1.6 million in losses, *after three years of litigation*, indicates that the DOJ has not made any sincere effort to contact identifiable victims, and has likely adopted a loss calculation methodology which significantly undervalues the amount of Centra Victims' actual losses. The foregoing all but confirms that, if the Victim Funds are forfeited, none of the Centra Victims will ever be made whole. This is particularly egregious given that the DOJ has repeatedly stressed, if forfeited, all of the DOJ's decisions concerning the use of such funds and in connection with any potential remission process would be discretionary and not subject to judicial review or inquiry. *See, e.g.*, ECF No. 436, December 30, 2020 letter to the Court (the DOJ would have "sole discretion as to which victims ultimately receive remission and in what amount"); *see also* ECF No. 209 at 24. In line with the DOJ's expenditures using the AFF to date, if Victim Funds are forfeited, after years of delay Centra Victims would receive a small fraction of Victim Funds, and the majority of such funds would be routed to other AFF expenditures. The DOJ's lackluster efforts to actually return Victim Funds to Centra Victims is so obvious even Defendant Sharma couldn't help but point it out:

> It is the defense's understanding that this extensive effort has resulted in approximately 56 letters from the victims claiming approximately $1,635,716.39 in losses. While undoubtedly a claims process will lead more claimants to submit a claim, after almost three years of victim outreach it seem highly unlikely that a significant number of additional victims will come forward, meaning that it appears almost certain that the victims who make claims will get paid in full, and the

government will receive a partial windfall from the $33,422,373.49 in sale proceeds.

*See* ECF No. 437 at 38.

Like the DOJ, foregoing restitution in lieu of forfeiture of the Victim Funds and potential remission provides significant benefits to Defendants who perpetrated this massive fraud. For example, the money judgments sought by the DOJ are significantly less than the actual losses suffered by the Centra Victims as a direct result of the criminal actions of Defendants. As such, foregoing restitution enables Defendants to evade being held fully accountable for the harm their crimes caused.

\*  \*  \*

In short, because Plaintiffs and their fellow Centra Victims are entitled to mandatory restitution under the MVRA, and granting forfeiture would only serve to benefit the DOJ and Defendants at the expense of the actual victims in this case, Plaintiffs respectfully request that forfeiture be denied, restitution implemented with a robust program to compensate the Centra Victims, including Claimants. Should the forfeiture proceedings proceed, Claimants hereby request a hearing as to the validity of Claimants' interest in a portion of the 100,000 ETH seized from Centra Tech by the FBI on behalf of Centra Victims in 2018.

**[THE REST OF THIS PAGE IS INTENTIONALLY LEFT BLANK]**

Dated: January 19, 2021

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Adam M. Apton*
Adam M. Apton (AS-8383)
55 Broadway, 10th Floor
New York, New York 10006
Telephone: (212) 363-7500
Facsimile: (212) 636-7171

-and-

James Taylor-Copeland *
**TAYLOR-COPELAND LAW**
james@taylorcopelandlaw.com
501 W. Broadway Suite 800
San Diego, CA 92101
(619) 400-4944

Donald J. Enright *
Elizabeth K. Tripodi *
**LEVI & KORSINSKY, LLP**
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Fax: (202) 333-2121

-and-

**KOMLOSSY LAW P.A.**
Emily Komlossy *
eck@komlossylaw.com
4700 Sheridan St., Suite J
Hollywood, FL 33021
Phone: (954) 842-2021
Fax: (954) 416-6223

* to be admitted *pro hac vice*

*Attorneys for Plaintiffs-Claimants Jacob Zowie Thomas Rensel, Wang Yun He, Chi Hao Poon, King Fung Poon, Jae J. Lee, Mateusz Ganczarek, and Rodney Warren*

-and-

John A. Carriel *
**ZELLE LLP**
1775 Pennsylvania Ave, NW, Suite 375
Telephone: (202) 899-4111
Facsimile: (612) 336-9100
Email: jcarriel@zelle.com

## **CLIENT-CLAIMANT SIGNATURES**

I hereby attest under penalty of perjury that the contents of this petition are true and accurate to the best of my knowledge, and that I have authorized the filing of this document.

Jacob Zowie Thomas Rensel:

DATE: 1/18/2021

SIGNATURE:

Wang Yun He:

DATE: _____

SIGNATURE: _____

Chi Hao Poon

DATE: _____

SIGNATURE: _____

King Fung Poon:

DATE: _____

SIGNATURE: _____

Jae J. Lee:

DATE: _____

SIGNATURE: _____

Mateusz Ganczarek:

DATE: _____

SIGNATURE: _____

Rodney Warren:

DATE: _____

SIGNATURE: _____

## **CLIENT-CLAIMANT SIGNATURES**

I hereby attest under penalty of perjury that the contents of this petition are true and accurate to the best of my knowledge, and that I have authorized the filing of this document.

Jacob Zowie Thomas Rensel:

DATE: _____

SIGNATURE: _____


Wang Yun He:

DATE: _____18.Jan.2021_____

SIGNATURE: _Wang Yun He_____


Chi Hao Poon

DATE: _____

SIGNATURE: _____


King Fung Poon:

DATE: _____

SIGNATURE: _____


Jae J. Lee:

DATE: _____

SIGNATURE: _____


Mateusz Ganczarek:

DATE: _____

SIGNATURE: _____


Rodney Warren:

DATE: _____

SIGNATURE: _____

## CLIENT-CLAIMANT SIGNATURES

I hereby attest under penalty of perjury that the contents of this petition are true and accurate to the best of my knowledge, and that I have authorized the filing of this document.

Jacob Zowie Thomas Rensel:

DATE: _____

SIGNATURE: _____


Wang Yun He:

DATE: _____

SIGNATURE: _____


Chi Hao Poon

DATE: 2021-01-17

SIGNATURE: _____


King Fung Poon:

DATE: _____

SIGNATURE: _____


Jae J. Lee:

DATE: _____

SIGNATURE: _____


Mateusz Ganczarek:

DATE: _____

SIGNATURE: _____


Rodney Warren:

DATE: _____

SIGNATURE: _____

## CLIENT-CLAIMANT SIGNATURES

I hereby attest under penalty of perjury that the contents of this petition are true and accurate to the best of my knowledge, and that I have authorized the filing of this document.

Jacob Zowie Thomas Rensel:

DATE: _____

SIGNATURE: _____

Wang Yun He:

DATE: _____

SIGNATURE: _____

Chi Hao Poon

DATE: _____

SIGNATURE: _____

King Fung Poon:

DATE: __2C2I - CI - I7__

SIGNATURE: _____

Jae J. Lee:

DATE: _____

SIGNATURE: _____

Mateusz Ganczarek:

DATE: _____

SIGNATURE: _____

Rodney Warren:

DATE: _____

SIGNATURE: _____

## CLIENT-CLAIMANT SIGNATURES

I hereby attest under penalty of perjury that the contents of this petition are true and accurate to the best of my knowledge, and that I have authorized the filing of this document.

Jacob Zowie Thomas Rensel:

DATE: _____

SIGNATURE: _____

Wang Yun He:

DATE: _____

SIGNATURE: _____

Chi Hao Poon

DATE: _____

SIGNATURE: _____

King Fung Poon:

DATE: _____

SIGNATURE: _____

Jae J. Lee:

DATE: ___Jan 17 2021___

SIGNATURE: _____

Mateusz Ganczarek:

DATE: _____

SIGNATURE: _____

Rodney Warren:

DATE: _____

SIGNATURE: _____

## **CLIENT-CLAIMANT SIGNATURES**

I hereby attest under penalty of perjury that the contents of this petition are true and accurate to the best of my knowledge, and that I have authorized the filing of this document.

Jacob Zowie Thomas Rensel:
DATE: _____
SIGNATURE: _____


Wang Yun He:
DATE: _____
SIGNATURE: _____


Chi Hao Poon
DATE: _____
SIGNATURE: _____


King Fung Poon:
DATE: _____
SIGNATURE: _____


Jae J. Lee:
DATE: _____
SIGNATURE: _____


Mateusz Ganczarek:
DATE: _18/01/2021_____
SIGNATURE: _Ganczarek_____


Rodney Warren:
DATE: _____
SIGNATURE: _____

## CLIENT-CLAIMANT SIGNATURES

I hereby attest under penalty of perjury that the contents of this petition are true and accurate to the best of my knowledge, and that I have authorized the filing of this document.

Jacob Zowie Thomas Rensel:

DATE: _____

SIGNATURE: _____


Wang Yun He:

DATE: _____

SIGNATURE: _____


Chi Hao Poon

DATE: _____

SIGNATURE: _____


King Fung Poon:

DATE: _____

SIGNATURE: _____


Jae J. Lee:

DATE: _____

SIGNATURE: _____


Mateusz Ganczarek:

DATE: _____

SIGNATURE: _____


Rodney Warren:

DATE: _January 17, 2021_

SIGNATURE: _____

22

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2021, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, along with all counsel so registered. I also hereby certify that a copy of this petition has been mailed by first class mail to Assistant United States Attorney Samson Enzer, One St. Andrew's Plaza, New York, NY 10007.


*/s/ Adam M. Apton*

Adam M. Apton